**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**NEW YORK DIVISION**

| | | |
|---|---|---|
| **BRAND ENGAGEMENT NETWORK, INC.** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. _1:25-cv-02245** |
| **AFG COMPANIES, INC.,** | § § § § § § § § § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Brand Engagement Network, Inc. ("**BEN**") files this Original Complaint against Defendant AFG Companies, Inc., (collectively, "**Defendant or AFG**") and respectfully shows the Court the following:

This case arises out of a simple failure to comply with contract terms. Defendant signed a Subscription Agreement on September 7, 2023 in which it agreed to purchase securities on an installment basis from BEN. One installment payment was due on March 13, 2025, and this payment was not made. As a result, AFG is in breach of the Subscription Agreement.

## I.    PARTIES

1.    BEN is a publicly traded corporation incorporated in Delaware with its principal offices in Jackson, Wyoming and Seoul, Republic of Korea.  BEN is an innovator in AI-powered customer engagement solutions, providing advanced technology designed to enhance data

utilization, improve customer interactions, and drive operational efficiency. BEN entered into the Subscription Agreement with AFG.

2.    Defendant Automotive Financial Group, Inc. ("**AFG**") is a Texas domestic for-profit corporation with its principal place of business in Grapevine, Texas. AFG was the primary counterparty to the Subscription Agreement and failed to fulfill its contractual obligations by failing to make the required March 13, 2025 payment. Defendant AFG Companies, Inc. is a Texas domestic for-profit corporation  with its principal place of business in Grapevine, Texas. AFG was the primary counterparty to the Subscription Agreement and failed to fulfill its contractual obligations by failing to make the March 13, 2025, subscription payment.

## II.    JURISDICTION AND VENUE

3.    This Court also has jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Plaintiff BEN and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    Plaintiff BEN is a citizen of Delaware and Wyoming, while the Defendant AFG is a Texas entity.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Subscription Agreement expressly designates New York County, New York, as the exclusive forum for resolving disputes. Defendant AFG expressly consented to jurisdiction in this Court and waived any objections to venue under Subscription Agreement, ¶ 10(m).

6.    AFG is a Texas-based entity whose operations are central to the claims in this case. By entering into the Subscription Agreements with BEN, Defendant AFG purposefully availed itself of the jurisdiction of this Court.

### III.    FACTUAL BACKGROUND

**B.    The Subscription Agreement**

7.     On September, 7, 2023, BEN, a cutting-edge innovator in AI-powered customer engagement solutions, entered into a Subscription Agreement with AFG (the "**Agreement**"). A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**. The Agreement was a cornerstone of BEN's efforts to expand into the automotive sector, leveraging AFG's established presence and network within the industry. AFG was tasked with purchasing the requisite number of shares on the assigned dates consistent with the Agreement.

8.     Under the terms of the Subscription Agreement, Plaintiff Brand Engagement Network Inc. ("BEN") undertook several binding obligations to facilitate the sale of equity to AFG as part of a structured private placement transaction. These obligations included issuing shares, ensuring the proper assignment of contractual rights, complying with securities laws, and facilitating the registration of AFG's shares. BEN has fully complied with all of its contractual obligations, whereas AFG has materially breached its own obligations under the Agreement.

9.     BEN agreed to issue and deliver to AFG Initial Shares of its common stock, which would automatically convert into PubCo Common Stock upon the Business Combination Closing (Subscription Agreement, ¶ 1(a)(i)). These shares were to be delivered in book-entry form, free and clear of any liens or restrictions, other than those arising under applicable securities laws (Subscription Agreement, ¶ 2(d)). BEN complied with this obligation by preparing the necessary documentation and ensuring that AFG's shares were properly reserved for issuance upon the successful closing of the Business Combination.

10.     BEN committed to ensuring that PubCo would establish a share reserve with its transfer agent, specifically reserving the necessary shares for future installment purchases by AFG

Plaintiff's Original Complaint

(Subscription Agreement, ¶ 2(d)). BEN complied with this obligation by facilitating the proper corporate actions to secure these reserved shares upon the Business Combination Closing.

11.    As a fiduciary to its shareholders, BEN retained the right to enforce the Subscription Agreement and take all necessary actions to compel AFG's performance, ensuring that it upheld its payment obligations (Subscription Agreement, ¶ 3(c)(ii)). This obligation included seeking legal remedies in the event of a material breach by AFG, such as its failure to make the required installment payment due on March 13, 2025. BEN has acted in full compliance with this provision by seeking enforcement through the legal system.

12.    Under the terms of the Subscription Agreement, Defendant AFG Companies Inc. undertook several material obligations in exchange for its right to acquire shares in Brand Engagement Network Inc. and, subsequently, the newly formed PubCo upon the completion of the Business Combination. The Agreement set forth clear and enforceable duties on AFG, including, but not limited to, the payment of agreed-upon purchase prices for Initial and Installment Shares, compliance with agreed funding deadlines, and adherence to the terms of share issuance and assignment provisions.

13.    AFG expressly agreed to purchase and pay for 650,000 Initial Shares of BEN's common stock at an aggregate purchase price of $6.5 million (Subscription Agreement, ¶ 1(a)(i)). AFG was required to wire these funds into an escrow account at least two (2) business days prior to the Scheduled Business Combination Closing Date (Subscription Agreement, ¶ 2(c)). Upon successful closing, the Initial Shares were to be converted into PubCo Common Stock and delivered to AFG in book-entry form, free and clear of any liens or restrictions other than those arising under federal and state securities laws (Subscription Agreement, ¶ 2(d)).

14.    In addition to the Initial Shares, AFG agreed to purchase additional shares of PubCo Common Stock in four annual installments, with a total purchase obligation of $26.0 million over a four-year period (Subscription Agreement, ¶ 1(a)(ii)). Each installment was to be calculated based on the Market Price, with a minimum price floor of $2.11 per share (Subscription Agreement, ¶ 2(b)). AFG was required to make each installment payment at least one (1) business day prior to each Installment Offering Closing Date (Subscription Agreement, ¶ 2(e)).

15.    The Agreement provided that, upon completion of the Business Combination, BEN would assign its rights and obligations to PubCo, and AFG explicitly agreed to accept and honor this assignment (Subscription Agreement, ¶ 1(b)). AFG's obligations under the Agreement were not subject to revocation or reconsideration following the Business Combination Closing, and it remained bound by the contractual commitment to make installment payments to PubCo as originally agreed.

16.    The Agreement did not condition AFG's payment obligations on any speculative event or subjective determination. Rather, AFG committed to funding its payment obligations in full, without condition or offset, in accordance with the deadlines outlined in the Agreement (Subscription Agreement, ¶ 2(c), 2(e)). The Agreement explicitly stated that failure to fund any installment payment constituted a material breach (Subscription Agreement, ¶ 3(c)(ii)).

17.    AFG expressly agreed that the Subscription Agreement would be governed by the laws of the State of New York (Subscription Agreement, ¶ 10(m)). AFG also consented to jurisdiction in New York courts and waived its right to contest venue, acknowledging that New York County, New York, was the designated forum for dispute resolution (Subscription Agreement, ¶ 10(m)).

18.    The Agreement was supported by mutual consideration: BEN acted in good faith throughout the partnership, fulfilling all conditions precedent and cooperating with AFG to implement the Agreement.

19.    At all times relevant to this action, BEN has fully performed all of its obligations under the Subscription Agreement. BEN has issued shares, provided proper notice, assigned contractual rights to PubCo, complied with SEC regulations, and facilitated share registration. In contrast, AFG has materially breached the Agreement by failing to make its required installment payment of $6.5 million on March 13, 2025, in direct violation of the payment terms (Subscription Agreement, ¶ 2(e), 3(c)(ii)). As a result of AFG's breach, BEN has suffered significant financial harm and business disruption, and is entitled to legal and equitable relief.

20.    Plaintiff BEN has fully satisfied all contractual obligations imposed under the Subscription Agreement, whereas Defendant AFG has materially failed to perform. By refusing to make its contractually mandated installment payment, AFG has disrupted the financial structure and strategic planning of PubCo and has failed to meet its legally binding financial commitments. Accordingly, BEN is entitled to recover all outstanding amounts due under the Agreement, plus interest, attorneys' fees, and any consequential damages resulting from AFG's breach.

C.    **The Agreement is a Valid Contract**

21.    Plaintiff Brand Engagement Network Inc. ("BEN") and Defendant AFG Companies Inc. ("AFG") entered into a valid and legally enforceable contract titled the Subscription Agreement, dated September 7, 2023 (the "Agreement"). This Agreement was executed by Michael Zacharski, Chief Executive Officer of BEN, and Ralph Wright Brewer III, Chief Executive Officer of AFG, on behalf of their respective corporate entities. The execution of

this Agreement constituted a mutual and binding commitment by both parties, with clearly delineated obligations, consideration, and remedies for nonperformance.

22.    The Agreement clearly set forth the material terms of the transaction, establishing that AFG agreed to purchase, and BEN agreed to sell, Initial Shares of the Company for $6.5 million, which would convert into 650,000 shares of the newly formed entity, PubCo, following a business combination. The Agreement further obligated AFG to purchase an additional $26 million worth of Installment Shares over the course of four consecutive years in four equal installments. Each Installment Share purchase was explicitly tied to the Market Price, which was defined in the Agreement and subject to a minimum floor price of $2.11 per share. These clear and definite terms remove any ambiguity regarding the enforceability of the Agreement.

23.    The Agreement was supported by adequate and bargained-for consideration on both sides. AFG agreed to provide substantial monetary payments totaling $32.5 million in exchange for shares in BEN and, ultimately, the newly formed PubCo following the business combination. In return, BEN committed to issuing shares at a pre-determined Market Price, capping the maximum purchase price per share at $10 and offering additional protections for AFG, including registration rights under Section 6 of the Agreement, ensuring that AFG's shares could be sold on the open market in compliance with U.S. securities laws. Under New York law, mutual promises constitute sufficient consideration to create a binding contract. There was no lack of mutuality, as both parties made reciprocal commitments, and the obligations imposed upon AFG were definite, fixed, and legally binding.

24.    At all times relevant to this dispute, the Agreement was valid, enforceable, and not subject to any lawful defense to performance. There was no claim of fraud, duress, mistake, or unconscionability that would serve as a basis for voiding the contract. The Agreement was

Plaintiff's Original Complaint

executed at arm's length between sophisticated business entities, further reinforcing its enforceability.

### D.      BEN Has Performed Its Obligations Under the Agreement

25.      Plaintiff Brand Engagement Network Inc. has fully performed its obligations under the Subscription Agreement with AFG. The Agreement set forth a clear and enforceable exchange of obligations, requiring BEN to issue shares, assign contractual rights to PubCo, facilitate the registration process, and provide proper notice of the Business Combination Closing. At all times relevant to this dispute, BEN has fulfilled each of these obligations in accordance with the terms of the Agreement, whereas AFG has materially breached its own obligations by failing to make its required installment payment on March 13, 2025.

26.      Issuance and Delivery of Initial Shares – BEN was required to issue and deliver to AFG 650,000 Initial Shares of its common stock, which were set to automatically convert into PubCo Common Stock upon the Business Combination Closing (Subscription Agreement, ¶ 1(a)(i), 2(d)). BEN has fully performed this obligation by ensuring that the Initial Shares were properly reserved, issued, and converted into PubCo Common Stock as required. The shares were delivered to AFG free and clear of any liens or restrictions, except for those imposed by applicable federal and state securities laws.

27.      The Agreement provided that BEN would assign its rights and obligations under the Subscription Agreement to PubCo, which would assume responsibility for issuing Installment Shares and receiving future installment payments (Subscription Agreement, ¶ 1(b), 3(d)(ii)). BEN executed the Assignment to PubCo as required and ensured that PubCo was fully prepared to accept installment payments from AFG.

28.    BEN was obligated to reserve Installment Shares for issuance to AFG following the Business Combination Closing (Subscription Agreement, ¶ 2(d)). To fulfill this obligation, BEN caused PubCo to establish a share reserve with its transfer agent, ensuring that the necessary shares were available for AFG's future installment purchases.

29.    BEN facilitated the establishment of the Escrow Account to accept AFG's payment for the Initial Shares. Upon successful closing, BEN instructed the Escrow Agent to release the funds in accordance with the Agreement, ensuring that AFG's purchase funds were properly processed and accounted for (Subscription Agreement, ¶ 2(c)).

30.    BEN repeatedly sought to ensure AFG's compliance with its payment obligations under the Agreement. BEN provided multiple opportunities for AFG to fulfill its contractual obligations, including timely reminders of installment payment deadlines and assistance with payment processing. Despite BEN's full performance, AFG has failed to make the required installment payment due on March 13, 2025, thereby breaching the Agreement.

31.    At all relevant times, BEN has fully and faithfully performed all contractual obligations imposed under the Subscription Agreement. There is no contractual provision, condition precedent, or regulatory issue that would excuse AFG's nonperformance. BEN has met all conditions necessary for AFG's payment obligation to become due and enforceable.

32.    BEN has complied with every requirement set forth in the Subscription Agreement, whereas AFG has materially breached the Agreement by failing to remit the required installment payment. BEN is therefore entitled to legal and equitable relief, including monetary damages for the outstanding balance, pre-judgment interest, attorneys' fees, and any additional costs incurred as a direct result of AFG's breach.

E.    **<u>AFG Has Breached Its Obligation Under The Agreement</u>**

33. Defendant AFG Companies Inc. ("AFG") has materially breached its obligations under the Subscription Agreement dated September 7, 2023, by failing to make the required installment payment of $6.5 million due on March 13, 2025. The Subscription Agreement imposed clear, unconditional, and enforceable financial obligations on AFG, including its irrevocable commitment to purchase Initial Shares and subsequent Installment Shares in accordance with the agreed-upon schedule. AFG's failure to fulfill this payment obligation constitutes a fundamental breach, entitling Plaintiff Brand Engagement Network Inc. ("BEN") to damages and other appropriate relief.

34.    Under the Subscription Agreement, AFG was contractually obligated to purchase Installment Shares in four equal annual installments of $6.5 million each, with payments due on each of the first four anniversaries of the Business Combination Closing (Subscription Agreement, ¶ 2(b), 2(e)). The March 13, 2025, installment payment was a clear and non-contingent contractual obligation, yet AFG failed to make this required payment despite having been provided with all necessary notice and payment instructions.

35.    The Subscription Agreement did not condition AFG's installment payments on any external events, regulatory approvals, or subjective determinations (Subscription Agreement, ¶ 2(b)). AFG had an absolute obligation to remit payment on the scheduled due date, and its failure to do so was without legal justification or contractual basis. New York contract law recognizes that where a party fails to perform a clear contractual obligation, it constitutes a material breach.

36.    AFG's nonpayment was not due to any impossibility, frustration of purpose, or failure by BEN to perform its obligations. Instead, AFG's breach was a willful and unilateral failure to meet a financial obligation that was clearly delineated in the Subscription Agreement.

Under New York law, a party's unjustified refusal to make a required contractual payment constitutes a material breach warranting damages.

37.    In addition to breaching the express terms of the Subscription Agreement, AFG has also breached the implied covenant of good faith and fair dealing, which is inherent in all New York contracts. This covenant requires that neither party do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract. AFG's failure to make its required payment has directly undermined the purpose of the Agreement, depriving BEN of the expected consideration and disrupting its financial planning and business strategy.

38.    AFG was given ample notice of its upcoming payment obligations and was provided with clear instructions for wiring funds to PubCo prior to the installment payment due date. Despite these efforts, AFG failed to make the required payment and did not request an extension or modification of terms, further evidencing bad faith and willful nonperformance. New York law recognizes that a party's failure to cure a material breach after notice further supports a finding of liability.

39.    Under New York law, a breach is material when it goes to the root of the agreement and defeats the purpose of the contract. AFG's failure to remit a required contractual payment is a fundamental breach, as the Subscription Agreement was premised on AFG's commitment to purchase shares in exchange for financial consideration. The absence of this payment directly frustrates the purpose of the transaction and substantially impairs the value of the Agreement to BEN. AFG cannot assert impossibility of performance as a defense because the Subscription Agreement was an unconditional financial commitment, not contingent on market conditions or

external approvals. New York law holds that financial inability to pay is not a defense to contractual nonperformance

40.     AFG's failure to make the required installment payment was not inadvertent but a willful and deliberate breach designed to avoid its financial obligations under the Agreement. AFG had full knowledge of its payment obligations, was provided multiple notices, and made no effort to cure its default. A willful breach of contract, made in bad faith, further entitles BEN to damages for reputational harm and business disruption

41.     As a result of AFG's failure to make its installment payment, BEN and PubCo have suffered substantial financial harm, including: a. Loss of anticipated investment capital, disrupting financial planning and corporate initiatives. b. Impacts on stockholder confidence, as AFG's failure to honor its commitment raises concerns among other investors. c. Potential damage to market perception and PubCo's ability to secure additional financing.

42.     By failing to make the required payment of $6.5 million due on March 13, 2025, AFG has materially breached the Agreement. The obligation to make this installment payment was a core contractual obligation that was not contingent on any external factors, stockholder approvals, or market conditions. There was no express or implied condition precedent that would excuse AFG's performance. The failure to make this payment, despite the unambiguous language of the Agreement, constitutes a clear and direct breach under New York contract law. Accordingly, BEN is entitled to recover full damages, interest, attorneys' fees, and any other relief the Court deems appropriate.

**F.     Damages Suffered BY BEN as a Result of AFG's Breach**

43.     As a direct and proximate result of AFG's material breach of the Subscription Agreement, Plaintiff Brand Engagement Network Inc. ("BEN") has suffered significant financial

harm, including loss of expected capital contributions, reputational damage, impaired business operations, and increased legal costs. Under New York law, a non-breaching party is entitled to recover all reasonably foreseeable damages caused by the breach, including direct, consequential, and incidental damages.

44.    AFG was contractually obligated to remit an installment payment of $6.5 million on March 13, 2025, in exchange for its purchase of Installment Shares (Subscription Agreement, ¶ 2(b), 2(e)). AFG's failure to make this payment constitutes a fundamental breach, depriving BEN of a significant and expected capital infusion.

45.    Under New York law, the measure of damages for a breach of contract is the amount necessary to place the non-breaching party in the position it would have been in had the contract been fully performed. Here, the unpaid $6.5 million installment payment represents a direct financial loss to BEN, and BEN is entitled to recover the full amount of the missed payment, plus interest and applicable costs.

46.    BEN is entitled to prejudgment interest at a statutory rate of 9% per annum from the date the installment payment became due. Interest should be calculated from March 13, 2025, until the date of final judgment, ensuring that BEN is compensated for the time value of the money it was wrongfully denied. Additionally, BEN is entitled to post-judgment interest, ensuring that interest continues to accrue until AFG satisfies the judgment in full.

47.    AFG's failure to make the required payment has directly disrupted BEN's business operations, preventing it from utilizing the anticipated funds for strategic initiatives, expansion, and investment opportunities. Under New York law, consequential damages are recoverable where they were foreseeable and within the contemplation of the parties at the time of contracting

48.     The Subscription Agreement was structured to ensure predictable and reliable capital infusions, allowing BEN to execute its business strategy and finance operations (Subscription Agreement, ¶ 2(b), 2(e)). By breaching its payment obligation, AFG has: a. Disrupted BEN's financial planning, requiring it to seek alternative funding sources. b. Forced BEN to delay or abandon planned business initiatives due to lack of expected capital. c. Harmed BEN's ability to attract additional investors, as AFG's default raises concerns about contractual reliability.

49.     These foreseeable business disruptions entitle BEN to recover additional consequential damages, in an amount to be determined at trial, for lost investment opportunities, increased financing costs, and operational setbacks caused by AFG's nonpayment.

50.     AFG's breach has also damaged BEN's reputation in the investment community, creating uncertainty regarding its capital structure and financial stability. Investors and stakeholders rely on the timely fulfillment of contractual commitments to assess a company's financial health and credibility. AFG's failure to remit its scheduled payment has: a. Raised doubts among other investors about BEN's ability to enforce financial commitments, affecting future fundraising efforts. b. Caused uncertainty in the marketplace, impacting BEN's stock value and investor confidence. c. Weakened BEN's negotiating position with other potential investors or business partners.

51.     Under New York law, a party may recover damages for harm to its business reputation if such harm was a foreseeable consequence of the breach. Given that BEN operates in a market that heavily relies on investor confidence, the reputational harm caused by AFG's default is both substantial and compensable.

Plaintiff's Original Complaint

52.      As a result of AFG's material breach, BEN has been forced to incur significant legal fees and litigation costs to enforce its contractual rights. Under New York law, a party may recover attorneys' fees where the contract explicitly provides for such recovery.

53.      The Subscription Agreement includes provisions requiring AFG to comply with its financial obligations, and AFG's willful nonpayment has necessitated costly legal action to compel enforcement. Accordingly, BEN seeks reimbursement for all reasonable attorneys' fees, court costs, and expenses incurred in prosecuting this action.

54.      AFG's material breach has caused significant and measurable harm to BEN, entitling BEN to recover direct monetary damages, interest, consequential damages, and attorneys' fees. Because the Subscription Agreement contained unambiguous payment obligations, and because BEN has fully performed its contractual duties, there is no valid defense to AFG's nonpayment. Accordingly, BEN seeks full damages, interest, costs, and any additional relief this Court deems appropriate.

## IV.    CAUSES OF ACTION

### COUNT 1
### Breach of Contract

55.    Plaintiff realleges each and every allegation set forth above and incorporates them herein.

56.    To establish a breach of contract claim under Texas law, the Plaintiff must prove 1) the existence of a valid contact; 2) Plaintiff's performance or tendered performance; 3) Defendants breach of the contract; and 4) damages sustained as a result of the breach.

57.    Plaintiff Brand Engagement Network Inc. ("BEN") and Defendant AFG Companies Inc. ("AFG") entered into a valid and legally enforceable contract titled the Subscription Agreement, dated September 7, 2023 (the "Agreement"). This Agreement was executed by Michael Zacharski, Chief Executive Officer of BEN, and Ralph Wright Brewer III, Chief Executive Officer of AFG, on behalf of their respective corporate entities. The execution of this Agreement constituted a mutual and binding commitment by both parties, with clearly delineated obligations, consideration, and remedies for nonperformance.

58.    Under well-established New York contract law, a breach of contract claim requires proof of (1) the existence of a valid contract, (2) Plaintiff's performance, (3) Defendant's breach, and (4) damages resulting from the breach. The Agreement at issue here meets all elements of an enforceable contract. The formation of the contract adhered to fundamental contractual principles, including offer, acceptance, mutual assent, and consideration .

59.    On September 7, 2023, BEN and Defendant AFG Companies Inc. ("AFG") entered into a valid and enforceable Subscription Agreement (the "Agreement"), whereby AFG agreed to purchase Initial Shares and Installment Shares of BEN's stock in exchange for financial

consideration totaling $32.5 million over a defined payment schedule.

60.    The Agreement required AFG to make four equal installment payments of $6.5 million each, with the first installment payment due on March 13, 2025, in exchange for additional Installment Shares (Subscription Agreement, ¶ 2(b), 2(e)).

61.    The Agreement imposed a clear and unconditional obligation on AFG to remit this payment without contingency, and BEN fully performed all conditions precedent required to trigger AFG's payment obligation (Subscription Agreement, ¶ 3(d)(ii)).

62.    Despite its contractual obligation, AFG failed to make the required installment payment of $6.5 million on March 13, 2025, in direct violation of the Agreement.

63.    AFG's failure to pay constitutes a material breach of the Agreement, depriving BEN of the expected financial consideration and directly frustrating the purpose of the contract.

64.    As a direct and proximate result of AFG's breach, BEN has suffered significant financial damages, including but not limited to: a. $6.5 million in unpaid contractually obligated funds, b. Prejudgment interest at the statutory rate of 9% per annum from March 13, 2025, c. Consequential damages, including disruption to BEN's financial planning and loss of investment opportunities, d. Reputational harm impacting BEN's standing with investors and business partners, and e. Attorneys' fees and costs incurred in enforcing the Agreement.

65.    AFG's breach was willful and without legal justification, as there were no conditions, contingencies, or defenses that would excuse its failure to pay the required installment.

66.    Under New York law, a party is liable for breach of contract when it fails to perform a clear, enforceable obligation without legal excuse, and monetary damages are recoverable to place the non-breaching party in the position it would have been had the contract been fully performed.

67.     Accordingly, BEN seeks judgment against AFG for breach of contract

## V.     DAMAGES

**Actual Damages**

68.     BEN has suffered significant actual damages as a direct result of the Defendants' breach of contract.

**Pre- and Post-Judgment Interest**

69.     BEN seek pre-judgment and post-judgment interest on all damages awarded, as permitted by law, to fully compensate them for the harm suffered due to Defendants' actions.

**Consequential Damages**

70.     The misconduct of AFG entities has caused Consequential damages, including but not limited to financial harm, lost investment opportunities, and reputational damages harm to BEN.

**Attorneys' Fees and Costs**

71.     BEN is entitled to recover their attorneys' fees and costs incurred in pursuing this action under applicable law and the terms of the Reseller and Consulting Agreements.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brand Engagement Network Inc. respectfully requests that this Court enter judgment against Defendant AFG Companies Inc., and award Plaintiff:

1.    Actual and consequential damages, including lost revenue, denied compensation, and mitigation costs;

2.    Prejudgment interest at the statutory rate of 9% per annum from March 13, 2025;

3.    Post-judgment interest;

4.    Consequential damages, including but not limited to financial harm, lost investment opportunities, and reputational damages;

5.    Attorneys' fees and litigation costs;

6.    Attorneys' fees and litigation costs incurred in enforcing the Agreement; and

7.    Any additional relief the Court deems just and proper.

Plaintiff's Original Complaint

Respectfully submitted,

/s/ Eric N. Whitney
**ERIC N. WHITNEY**
**MICHAEL LYNN**
**ARNOLD & PORTER KAYE SCHOLER, LLP**
259 West 55th Street
New York, New York 10019
Telephone: (212) 836-7930
eric.whitney@arnoldporter.com
michael.lynn@arnoldporter.com


**MATTHEW E. YARBROUGH**
**JASON BLACKSTONE**
**YARBROUGH BLACKSTONE, PLLC**
100 Crescent Ct., 7th Floor
Dallas, Texas 75201
Telephone: (214) 263-7500
Facsimile: (713) 650-9701
matthew@ybfirm.com.
jason@ybfirm.com
**(Applications for Pro Hac Vice Admission to Follow)**

*ATTORNEYS FOR PLAINTIFF*

Plaintiff's Original Complaint